# DABNEY *v.* DABNEY.

DIVORCE; EFFECT OF CODE AND SUBSEQUENT LEGISLATION ON PENDING
DIVORCE 'SUITS.

Where, pending a suit for divorce on the ground of desertion, the code
for this District went into effect, namely, from and after January
1, 1902, under which a divorce could be granted for adultery only;
and thereupon the lower court sustained a demurrer to and dis-
missed the petition upon the ground that a divorce proceeding was
not "a civil cause" or "suit" within the meaning of Sec. 1638 of
the code, providing that the repeal by the preceding section of
any statute should not affect "any right accruing or accrued, or
any suit or proceeding had or commenced in any civil cause before
such repeal;" and after the decree of dismissal and pending an
appeal to this court, Congress passed an act providing that "all
petitions for divorce pending on December 31, 1901, may be pro-
ceeded with and disposed of under the provisions of the statutes
in force on said date;" it was *held*, that the decree should be re-
versed; the majority of the court declining to pass upon the ques-
tion of whether a divorce proceeding was within the saving clause
of Sec. 1638, but holding that this court should give effect to
the act of Congress, the same not being objectionable legislation
because it was retroactive, having been intended by Congress to
be such and not having affected vested rights; while the minority
was of opinion that the reversal should be based upon the ground
that the proceeding for divorce was a civil cause or suit within
the meaning of Sec. 1638, and being also of opinion that the
act of Congress could have no application, as the decree appealed
from, which was passed prior to the act, finally disposed of the
cause.

No. 1206. Submitted October 7, 1902. Decided November 4, 1902.

HEARING on an appeal by the complainant from a decree
of the Supreme Court of the District of Columbia dismissing
a petition for divorce on the ground of desertion.

*Reversed.*

The COURT in the opinion stated the case as follows:

This is a suit for divorce from the bond of matrimony instituted in the Supreme Court of the District of Columbia on December 24, A. D. 1901, by the appellant, Pinkie M. Dabney, as petitioner against the appellee, John N. Dabney, as defendant or respondent, on the ground of alleged willful desertion and abandonment of the petitioner by the defendant, continued for the period of two years and upwards before the time of the institution of the suit. It seems to have been one of a great number of similar suits instituted in the court below in the last month or two of the year 1901, in anticipation of the new code of Law for the District of Columbia, approved March 3, 1901, but which was to go into effect from and after the first day of January, 1902, according to its own provisions, and by which thereafter adultery was to constitute the only cause for divorce from the bond of matrimony in this District.

The appellant's petition was pending on December 31, 1901. On March 14, 1902, a demurrer was filed to it on behalf of the defendant, here the appellee, on the ground that the court had no jurisdiction of the case, the point being that, by the repeal of the old law and the substitution of the provisions of the code in its place, the court, from and after January 1, 1902, lost jurisdiction to decree a divorce from the bond of matrimony on the ground of desertion and abandonment, notwithstanding certain reservations in the code itself with regard to suits then pending. These reservations are contained in section 1638 of the code, and are in the following terms:

" SEC. 1638. The repeal by the preceding section of any statute, in whole or in part, shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before such repeal, but all rights and liabilities under the statutes or parts thereof so repealed shall continue and may be enforced in the same manner as if such repeal had not been made: *Provided,* That the provisions of this code relating to procedure or

practice, and not affecting the substantial rights of parties, shall apply to pending suits or proceedings, civil or criminal."

It seems to have been conceded in the court below, as it is conceded in this court, that, without the saving clause of section 1638 of the code, the court would have been without authority from and after January 1, 1902, to grant a divorce from the bond of matrimony on the appellant's petition; and the question raised was, whether the reservation in regard to "civil causes" instituted before the code went into effect included suits for divorce from the bond of matrimony on the ground of desertion. The court below, upon the demurrer, held that the reservation did not include such a proceeding for divorce as the one under consideration; and accordingly sustained the demurrer and dismissed the petition. The order of dismissal was entered on April 11, 1902; and the petitioner immediately appealed from it to this court.

Afterwards, and while this appeal was pending here, the Congress, by an act approved June 30, 1902, amended the code in numerous details, and among other things provided " that all petitions for divorce pending on the 31st day of December, 1901, may be proceeded with and disposed of under the provisions of the statutes in force on said date."

In this condition of the record and of the legislation of Congress, we are now called upon to consider the appeal.

*Mr. Alexander H. Bentley* and *Mr. E. Hilton Jackson* for the appellant:

1. Although the divorce law, as it existed prior to January 1, 1902, the time when the code became operative, has been repealed, yet it is submitted that the jurisdiction of the court to grant a decree of absolute divorce upon the ground of desertion in a suit begun before January 1, 1902, is saved by section 1638 of the code, construed in connection with section 1641 thereof. A saving clause restricts a repeal-

ing act and saves rights and pending proceedings from the annihilation which would result from unrestricted repeal. Such statutes are sometimes in the nature of general saving clauses and though, of course, not binding upon a subsequent legislature, yet courts, in construing the repealing act, will adhere to them, unless a contrary intent of the legislature *plainly* appears. Am. & Eng. Encyc. of Law (1st ed.), Vol. 23, pp. 437, 438, and cases cited thereunder; *Inskeep* v. *Inskeep,* 5 Iowa, 204; *Kemmish* v. *Ball,* 30 Fed. Rep. 759; *United States* v. *Kohnstamm,* 5 Blatchf. 222; *Beatly* v. *People,* 6 Colo. 538; *Cochran* v. *Taylor,* 13 Ohio St. 382; *Dobbins* v. *First Nat. Bank,* 112 Ill. 553. Such a saving clause is found in section 1638 of the code, and its effect is to preserve from the effect of repeal all such rights and pending proceedings as are included within its terms.

2. Numerous authorities hold that a proceeding for divorce is a *civil* cause or action. A divorce suit has been held to be within the meaning of statutes conferring certain jurisdiction in all *civil* actions or cases. *Ellis* v. *Hatfield,* 20 Ind. 101; *Herron* v. *Herron,* 16 Ind. 129; *Powell* v. *Powell,* 104 Ind. 18; *Evans* v. *Evans,* 105 Ind. 204; *Child* v. *Smith,* 19 Wis. 558; *Hurt* v. *Hurt,* 2 Lea, 176; *Clark* v. *Clark,* 10 N. H. 380; *Humphrey* v. *Humphrey,* 7 Conn. 116; *Delliber* v. *Delliber,* 9 Conn. 233; *Head* v. *Head,* 2 Kelly, 191; *Prather* v. *Prather,* 26 Kan. 273.

3. In this country no courts have had divorce jurisdiction except by statute. In those States, where the distinction between law and equity has not been abolished, divorce has been and is a matter of equity cognizance, as is the case in the District of Columbia. Sections 732 and 736 of the Revised Statutes of the District of Columbia; Secs. 85 and 963 of the code of the District of Columbia; *Bayly* v. *Bayly,* 2 Md. Ch. 326; *Stebbins* v. *Anthony,* 5 Colo. 348; *Rose* v. *Rose,* 4 Eng. (Ark.) 507; *Perry* v. *Perry,* 2 Paige (N. Y.), 501; *Fulton* v. *Fulton,* 36 Miss. 517; *Sharon* v. *Sharon,* 67 Cal. 185; *Latham* v. *Latham,* 30 Gratt. 307; *Richmond* v. *Richmond,* 10 Yerg. (Tenn.) 342. In construing the term " *civil action,*" as found in certain acts of

Congress, the Federal courts have uniformly held that it was used in contradistinction to *criminal* actions. *United States* v. *Ten Thousand Cigars,* 1 Woolw. 123; *Rison* v. *Cribbs,* 1 Dill. 181; *Green* v. *United States,* 9 Wall. 655; *Livingston* v. *Story,* 9 Pet. 632.

4. The learned justice of the court below in his opinion laid great stress upon the fact that a suit for divorce is a special statutory proceeding and *sui generis* in its nature, and that consequently it could not be considered as a *civil cause* within the terms of section 1638 of the code. In support of this doctrine, certain special proceedings cited in said opinion, which were held not to be civil causes. An examination of these cases, however, will show that some of the proceedings thus cited are not *judicial* proceedings at all. They are *Gordon* v. *The State of Kansas,* 4 Kan. 421; *Williamson* v. *Lane,* 52 Tex. 335; *Sweet* v. *Sherman,* 21 Vt. 23 (*Contra, Mann* v. *People,* 35 Ill. 467; *Maloney* v. *People,* 38 Ill. 62; *Allison* v. *People,* 45 Ill. 37; *Walker* v. *State,* 6 Blackf. 1); *Williamsport* v. *State,* 90 Pa. St. 498; *Withers* v. *State,* 36 Ala. 252; *Garner* v. *Gordon,* 41 Ind. 92 (*Contra, Ex parte Tom Tong,* 108 U. S. 556); *Convers* v. *Grand Rapids & Ind. RR. Co.,* 18 Mich. 459 (*Contra, Kohl* v. *United States,* 91 U. S. 367; *Searl* v. *School District No. 2,* 124 U. S. 197; *Boom Co.* v. *Patterson,* 98 U. S. 403; *Pacific RR. Removal Cases,* 115 U. S. 1; *Colorado Midland Ry. Co.* v. *Jones,* 29 Fed. Rep. 193; *Mineral Range RR. Co.* v. *Detroit, etc., Copper Co.,* 25 Fed. Rep. 515; *Warren* v. *Wisconsin Valley RR. Co.,* 6 Biss. 425); *Powell* v. *Powell,* 104 Ind. 18; *Railroad Co.* v. *Heath,* 9 Ind. 558; *Turnpike Co.* v. *Burket,* 26 Ind. 52 (*Contra, Powell* v. *Powell, supra*). The entire question as to the nature of a suit for divorce has been admirably summed up by Bishop in his work on Marriage and Divorce, Vol. II, Sec. 234.

An examination of the two District of Columbia cases of *Burdette* v. *Burdette,* 2 Mack. 469, and *Bergheimer* v. *Bergheimer,* 17 App. D. C. 381, cited by the court below, will show that they do not conflict with the contention of the appellant.

In the opinion of the court below, reliance is placed upon the case of *Lucas* v. *Lucas,* 3 Gray (Mass.), 136, to support the view that divorce is not a civil cause. It was held in that case, it is true, that a divorce proceeding was not a civil action within the meaning of a statute authorizing a bill of review in any civil action. But the decision of the court in that case was based solely upon the ground that the application for a review of a decree of divorce was a novel one in the practice of the State and that it would be against public policy to grant it, owing to the dangers to which it would give rise, as where innocent parties had remarried on the strength of the decree. The case of *Clark* v. *United States,* 19 App. D. C. 295, cited in the opinion of the court below, has no application to the question involved in the case at bar. As this was a *criminal* case, under no hypothesis could section 1638 of the code be construed as continuing in force the old law concerning the selection and qualification of jurors in criminal cases. It is respectfully submitted that the learned justice of the court below has misapprehended the principles concerning saving clauses as laid down in Endlich on Statutes, Sec. 201; Black on Interpretation of Laws, 278, 279, and in the cases of *Youett* v. *Simons,* L. R., 10th Chan. Div. 518, and *Alton Wood's Case,* 1 Coke, 47*a,* all of which are relied upon in the opinion. Section 1638 of the code is not an instance of a saving clause repugnant to or inconsistent with the body of the statute, within the meaning of these authorities. The very purpose of a saving clause is to exempt pending suits or proceedings from repeal, and in serving this purpose it cannot be regarded as repugnant to the body of the statute. In this respect, section 1638 of the code is the same as all other saving clauses. The fact that Congress repealed the divorce law contained in section 738 of.the Revised Statutes of the District of Columbia did not prevent it from preserving pending divorce suits by a saving clause, and such a saving clause is found in section 1638 of the code, which is not inconsistent with the intention of Congress as declared in section 966 of the code. The code is but a single act of Congress, notwith-

standing the fact that its provisions are numerous and extensive. Although many of the old laws, including the former divorce law, are repealed by implication in the various sections of the code wherein new laws are substituted for the old, yet they are also expressly repealed by section 1636, which is a general repealing clause applicable to the entire code. So, section 1638 is a general saving clause, embracing within its terms all civil causes, whereas section 1641 is a saving clause in respect to criminal cases. These are the only saving clauses in the code, and it was the intention of Congress that they should cover all cases. Therefore, in view of the broad and sweeping provisions of section 1638, Congress deemed it entirely unnecessary to make any special provisions elsewhere in the code as to the preservation of pending divorce suits, the jurisdiction of the court in these cases being plainly and sufficiently saved by the aforesaid section 1638.

*Mr. T. L. Jeffords* and *Mr. George P. Chase* for the appellee:

1. A law after it is repealed is, as regards its operative effect, considered as if it had never existed, except as to matters and transactions passed and closed. Sutherland on Stat. Con., Sec. 162; Am. & Eng. Encyc. of Law, Vol. 23, pp. 500–502; *Bank of Hamilton* v. *Dudley,* 2 Pet. 492; *Ex parte McCordle,* 7 Wall. 506, at p. 514. If a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law. *Railroad Co.* v. *Grant,* 98 U. S. 398, at p. 402; *Gurnee* v. *Patrick Co.,* 137 U. S. 141; *Morey* v. *Lockhart,* 123 U. S. 56; *Grant* v. *Grant,* 12 S. C. 29; *Wilson* v. *Nebraska,* 123 U. S. 286.

2. It would seem that the only question presented in this case is a very narrow one, and that, if the words " civil cause " as used in section 1638 of the code include divorce suits, then the decree from which this appeal is taken should be reversed; and, if not, it should be affirmed. It is a well-

settled doctrine that saving clauses should be construed strictly. *United States* v. *Dickinson,* 15 Pet. 141, see p. 165; *Bank* v. *Peters,* 144 U. S. 570. A divorce suit is not a *civil cause,* but is a proceeding *sui generis.* 5 Am. & Eng. Encyc. of Law, 751, and cases cited; *Burdette* v. *Burdette,* 2 Mack. 469; *Bergheimer* v. *Bergheimer,* 17 App. D. C. 381. If, however, the language " civil cause " be held to be sufficient to include divorce suits, the decree from which is taken this appeal should not be reversed; for there can be no doubt Congress intended that after this code went into effect no divorce should be possible except upon the charge and proof of adultery. It is a canon of interpretation that the legislative purpose is to be borne in mind and that language susceptible of more than one interpretation or construction is to receive that which will bring it into harmony with such legislative purpose, rather than that which will tend to defeat it. 23 Am. & Eng. Encyc. of Law, 319; Sedgwick on Statutes, 359. This is illustrated by two decisions of this court touching the construction of section 7 of the act creating it. Section 7 of that act provides that: *"Any* party aggrieved by *any* final order, judgment or decree of the Supreme Court of the District of Columbia or any justice thereof may appeal therefrom to the Court of Appeals hereby created," but every one seemed to acquiesce in construing this provision to exclude the United States, although within the words *any party,* from appealing in a criminal case, although criminal case is within the words *any case,* and such construction of this section has had legislative sanction in the code which provides that in certain cases the United States may appeal. Notwithstanding the scope of the language of said section, this court has decided in *Ex parte Redmond,* 3 App. D. C. 317, that there can be no appeal to this court from the judgment of the Supreme Court of the District of Columbia in cases coming into it on appeal from a justice of the peace, although the words *any* final judgment must include same.

If this court is of the opinion that a divorce suit is within the language " civil. cause," as used in section 1683 of the

code, appellee contends that it is not within the legislative purpose, and by reasoning like that in *Ex parte Redmond,* 3 App. D. C. 317, and in the *Bergheimer Case,* 17 App. D. C. 381, it would seem that this court ought to reach the conclusion that the decree from which this appeal is taken should be affirmed.

Mr. Justice MORRIS delivered the opinion of the Court:

It may be that the construction placed by the court below upon the section 1638 of the code as excluding suits for divorce from its purview was too narrow and illiberal. But without passing in any manner upon that question, we are of the opinion that, under the act of Congress of June 30, 1902, it is our duty to reverse the decree appealed from and to remand the cause for further proceedings according to law.

Under our system of jurisprudence, the subject of divorce, as is well understood, is entirely a matter of statutory cognizance. It is unknown to the common law; and, independently of statutory enactment, it is unknown in equity. The right of divorce, so far as it may be regarded as a right, is wholly the creation of statute; and the legislative authority, which created it, may likewise take it away without violating any vested right or impairing the force of any natural principle of justice. Of course, the efficacy of decrees or judgments of the courts granted under the provisions of statutory enactments in force at the time at which such decrees or judgments were rendered cannot be impaired or affected by subsequent legislation on the subject antagonistic to the previously existing law. And it may safely be said, although the point is not necessary to the decision of the present case, that it is not within the scope of the legislative authority in our country to undo that which the courts have done by decree final and absolute pronounced under previous law. And we may also say, with special reference to the case before us, that, if the decree in the case had been permitted to become absolutely final, however erroneous it

might have been, there would have been no valid authority either in Congress or the courts to direct its reopening. Under such circumstances vested rights would have accrued; but except under such circumstances it is within the province of the legislative authority to ordain upon the subject as it pleases, to make, to alter, or to abolish law, and to change the course of procedure in regard thereto at any time. And if there is no reservation in regard to existing conditions or to existing suits, these must conform forthwith to the new legislation. These are statements of the law which cannot well be questioned or controverted.

Now, such being the law and such the power of Congress over the subject of divorce in this District, it is clear to us, that, under the amendatory act of June 30, 1902, we can proceed with and dispose of the case before us only under the provisions of the old law and without reference to the new law as enacted in the code. Such is the specific requirement of the act of June 30, 1902. The word "*may*," as used in that act, according to well established rules of construction of statute law, must be construed to mean "*shall*," so far as the action of the courts is concerned, although the permissive signification of the term is to be retained so far as respects the action of suitors. For it was not intended, of course, that they should be compelled to proceed, either under the old or the new law, whether they wished so to do or not; but it was undoubtedly the intention of Congress that, if they elected to proceed, the further action of the court in their cases should be under the old law, which was by necessary implication continued in force for that purpose. Now, the act of June 30, 1902, is imperative upon all courts alike; and this court is as much required to give effect to it as is the court below in any case yet pending before it to which the act is applicable. And we could not give effect to it by an affirmance of the decree in this cause, assuming of course, that the decree was correct, upon which question, as we have said, we decline under the circumstances to pass. For that decree beyond question was based upon the new law and not upon the old. We can only give

effect to the act of June 30, 1902, by reversing the decree and remanding the cause to the court below for further proceedings in accordance therewith. The petition in this case was pending on December 31, 1901; and the act of June 30, 1902, is therefore by its express terms applicable to it.

It is true that a construction of a statute which will give to the statute a retroactive effect is not favored. But there are statutes which are intended to have a retroactive effect and which serve a useful purpose in that regard; and when they violate no vested rights — and the act of Congress of June 30, 1902, as applied to the present case and to cases pending in the court below on December 31, 1901, and not finally disposed of at the date of its passage, certainly violates no vested right — such statutes must be upheld. The act of June 30 1902, is in terms to a certain extent retroactive; for it seeks to affect legal proceedings instituted under a different condition of the law; but it is not for that reason objectionable, in view of the complete control of the subject of divorce which appertains to the legislative authority.

It is of no importance in our opinion that there was here a decree of the lower court finally and completely disposing of the case so far as that court could dispose of it. That decree was suspended in its operation by the appeal to this court; and the cause was still pending undisposed of, and subject to the operation of Congressional legislation on the matter of divorce. If, for any reason, the court below, after sustaining the demurrer in this case, had postponed the entry of a final decree dismissing the petition, and in the interval the act of Congress of June 30, 1902, had been enacted, we apprehend that it would have been the duty of that court, upon the application of the parties, forthwith to rescind its action on the demurrer, and to proceed with the cause as directed by the act. This should have been the result, whether the act of June 30, 1902, is to be regarded as entirely new legislation, or whether it is to be considered as a legislative interpretation of the previously enacted section 1638 of the code.

Of course, what we say here is to be restricted rigidly and exclusively to the subject of divorce and to Congressional legislation in regard thereto. Our decision is not to be regarded as applicable in any other cases, civil or criminal, where the subject-matter is not so completely under the control of Congress as is that of divorce.

Adjudicated cases on the question under consideration, naturally enough, are not easily to be found; and we do not know that any are needed in support of our decision, when the statute seems to be so plain. But there have been numerous analogous cases, wherein decrees and judgments, correct in themselves when rendered, have been reversed for some supervening cause accruing afterwards. See *Secretary* v. *McGarrahan,* 9 Wall. 298; *United States* v. *Boutwell,* 17 Wall. 604; *Commissioners* v. *Sellew,* 99 U. S. 624; *United States* v. *Schurz,* 102 U. S. 378; *Thompson* v. *United States,* 103 U. S. 480; *United States* v. *Chandler,* 122 U. S. 643; *United States* v. *Lamont,* 155 U. S. 303; *United States* v. *Lochren,* 164 U. S. 701; *Warner Valley Stock Company* v. *Smith,* 165 U. S. 28; *United States* v. *Butterworth,* 169 U. S. 600. It is true that all these cases, except one, were suits for *mandamus* to compel the incumbent of an office to perform some alleged ministerial duty. The exceptional one, the case of *Warner Valley Stock Company* v. *Smith,* was a proceeding in equity for an injunction. In all of them it was held that, upon the resignation or withdrawal from office of the person against whom the proceeding was directed, the cause was abated by reason of such resignation or withdrawal, notwithstanding that the resignation or withdrawal supervened after decree or judgment rendered and while appeal was pending to a higher tribunal. In most or all of them, of course, the judgment or decree could not have been enforced, even if it had been affirmed. But they all illustrate the rule that, for causes supervening after appeal taken, the appellate court, without reference to the question of the correctness of the judgment or decree appealed from, may reverse the judgment or decree, and remand the cause. In the case of *Warner Valley Stock Company* v. *Smith,* and

in that of *United States* v. *Butterworth,* that was the course
pursued by the Supreme Court of the United States. We
perceive no difference in principle between abatement re-
sulting from the resignation or withdrawal of an officer and
the prohibition of an act of Congress in a matter over which
Congress has practically unlimited control.

It is our conclusion that, for the reasons stated, the de-
cree appealed from should be *reversed, and the cause re-
manded to the Supreme Court of the District of Columbia,
with directions to vacate such decree, and for such further
proceedings therein according to law as may be right and
just and consistent with the more recent legislation of
Congress. And it is so ordered.*

The Chief Justice concurs in the result, but for different
reasons than those therein stated.

Mr. Chief Justice ALVEY concurring:

I fully agree with my brother judges that the order ap-
pealed from in this case should be reversed; but the reasons
upon which my opinion is founded are quite different from
those stated in the opinion that has been delivered. In my
opinion the pending cause, that is, the application for di-
vorce, was a *civil cause or suit* within the meaning of sec-
tion 1638 of the code, which declared that " the repeal by
the preceding section of any statute, in whole or in part,
shall not affect any act done or right accruing or accrued,
or any suit or proceeding had or commenced in any civil
cause before such repeal, but all rights and liabilities under
the statutes or parts thereof so repealed shall continue and
may be enforced in the same manner as if such repeal had
not been made." The pending proceeding for divorce, I
think, was clearly within the saving by the section of the
code. The nature of the suit or action for divorce is civil,
and not criminal, and I think it is fully embraced by the
definition of a civil suit or action, as given by the authori-
ties. *Weston* v. *Charleston,* 2 Pet. 447; 2 Bish. Mar. and

Div., Sec. 234.   But if the pending proceeding at the time the code went into operation, from and after the first day of January, 1902, was not within the saving of section 1638 of the code, then I should be of opinion that the amendatory act of June 30, 1902, could have no application to this case, the decree of the court below having been passed on the 11th day of April, 1902, dismissing the bill for want of jurisdiction. In that view of the case, the decree was entirely right, and finally disposed of the case.   There was no law at the time upon which the decree for divorce could be made for the cause alleged.   The case, in that aspect of it, was, I think, clearly within the principle of the case of *The Baltimore & P. Railway Co.* v. *Grant,* 98 U. S. 398–403.   It was not within the intent or purview of the amendatory act of June 30, 1902, to open or vacate decrees that had made final disposition of the cause before the passage of the act; and, upon the assumption that the right to prosecute the proceeding had not been saved by the section of the code referred to, there was no power or jurisdiction in this court to entertain an appeal within the time that an appeal could be taken from the decree.

I am of opinion, however, as already stated, that the proceeding was within the saving as provided by section 1638 of the code, and I therefore concur in the reversal of the decree appealed from.